IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARY RUTH BOERNER                                                          PLAINTIFF

             v.                         Civil No. 2:14-CV-2178-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                             DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Mary Boerner, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her application for DIB on February 6, 2012, alleging an onset date of February 28, 2010, due to arthritis, keratoconus, vision problems, a corneal transplant in 2013, irritable bowel syndrome ("IBS")[1], fibromyalgia, and swollen/achy joints. Tr. 121-122, 140, 157-159, 168, 171, 178-179, 182, 185-186. The Commissioner denied Plaintiff's applications initially

---

[1] IBS is a condition characterized by recurrent abdominal discomfort or pain and at least two of the following symptoms: relief by defecation, change in frequency of stool or change in consistency of stool. *See* THE MERCK MANUAL, *Irritable Bowel Syndrome (IBS)*, http://www.merckmanuals.com/professional/gastrointestinal-disorders/irritable-bowel-syndrome-ibs/irritable-bowel-syndrome-ibs (last accessed September 24, 2015). Its cause is unknown, its pathophysiology incompletely understood, and its treatment is symptomatic consisting of dietary management and medications containing anticholinergic and agents targeting the serotonin receptors. *Id.* Extra-intestinal symptoms such as fatigue, fibromyalgia, sleep disturbances, and chronic headaches are also common among IBS sufferers. *Id.*

and on reconsideration.  Tr. 68-70, 72-73, 121-122.  An Administrative Law Judge ("ALJ") held an administrative hearing on December 18, 2013.  Tr. 21-42.  Plaintiff was present and represented by counsel.

At the time of the hearing, the Plaintiff was 58 years old.  Tr. 34.  She possessed a high school education, had two years of college credit, and had completed banking school through her employer.  Tr. 141.  Her past relevant work ("PRW") experience was as a general office clerk at a bank.  Tr.9, 141, 149-156.

On December 30, 2013, the ALJ entered a fully favorable decision finding the Plaintiff disabled as of February 28, 2010.  Tr. 16-20.  More specifically, he determined the Plaintiff had the RFC to perform light work, except that she must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and similar environments; she must avoid prolonged exposure to bright light; and she would miss work more than one day per month at unexpected times.  Tr. 18.  Further, from a mental perspective, he found she could perform work involving only simple, routine, and repetitive tasks; simple work-related decisions and few, if any, workplace changes; and, no more than incidental contact with coworkers, supervisors, and the general public.  Tr. 18.  Concluding that the Plaintiff could not return to her PRW, the ALJ then compared her RFC and vocational profile to the Medical-Vocational Guidelines and applied Grid Rule 202.06 to find the Plaintiff disabled as of February 28, 2010.  Tr. 19-20.

On February 27, 2014, the Appeals Council ("AC") sent notice of its intent to review the ALJ's decision pursuant to 20 CFR § 404.969, citing the absence of substantial evidence to support the ALJ's decision.  Tr. 115-120.  On July 15, 2014, the AC entered a partially favorable decision.  Tr. 5-9.  The AC found that the "mental work-related limitations established by the [ALJ], and

which were critical to the finding of disability, are not substantially supported by the evidence of record prior to December 27, 2012." Tr. 6. The AC then proceeded to enter the following findings:

> As of the alleged disability onset date, February 28, 2010, the claimant had the following severe medically determinable impairments: keratoconus in both eyes and irritable bowel syndrome. In January 2013, the claimant was found to have the additional severe medically determinable impairment of polyarthralgias, which was later revised to reflect fibromyalgia (20 CFR 404.1520(c)). . . . .
>
> From the alleged disability onset date through December 26, 2012, the claimant had a residual functional capacity for all work at all exertion levels, except she was required to avoid moderate exposure to fumes, dusts, gases, odors and poor ventilation. Due to a worsening of her existing impairments and the onset of fibromyalgia, beginning December 27, 2012 the claimant has had a residual function capacity for sedentary work as defined in 20 CFR 404.1567(a). However, because of chronic pain and malaise, the claimant is limited to work involving simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, workplace changes, and no more than incidental contact with co-workers, supervisors, and the general public. Further, the claimant must avoid even moderate exposure to fumes, odors, dusts, gasses, poor ventilation, and similar environments, and must avoid prolonged exposure to bright light; and the claimant will be absent more than one day per month at unexpected times.

Tr. 8. Accordingly, the AC determined the Plaintiff could perform her PRW as a general office clerk from her alleged onset date through December 26, 2012. Tr. 9. However, beginning December 27, 2012, the demands of her PRW exceeded her RFC. Due to her advanced age, the AC found that Medical-Vocational Rule 201.06 directed a finding of disability as of December 27, 2012. Tr. 9.

Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. ECF No. 6. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 17, 18.

**II.    Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

4

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

**III. Discussion:**

In one of three points of error, the Plaintiff contends that the AC arbitrarily determined her date of onset. In determining the disability onset date, the AC should consider the claimant's alleged date of onset, her work history, and the medical and other evidence of her condition. *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006); SOCIAL SECURITY RULING (SSR) 83-20. "[T]he date alleged by the individual should be used if it is consistent with all the evidence available." SSR 83-20.

"With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20. Further, how long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. *Id*. In such cases, where the medical evidence regarding onset is ambiguous, the AC should obtain an expert opinion from a medical advisor to determine a medically reasonable date of onset. *Karlix*, 457 F.3d at 747.

The Plaintiff alleged an onset date of February 28, 2010. The ALJ agreed with the onset date and issued a fully favorable decision. However, the AC reversed the ALJ's determination finding the Plaintiff capable of performing work at all exertional levels with only environmental restrictions through December 27, 2012. The AC based this onset date on the Plaintiff's testimony that she had a significant fibromyalgia flare-up on this date. Tr. 28. 178-179. However, the AC

5

failed to account for her testimony regarding her two prior episodes of joint pain wherein she was unable to get out of bed. Tr. 28.

The medical evidence reveals that the Plaintiff's first complaint of back pain occurred in January 2011. Tr. 348-352. An x-ray of her lumbar spine taken in 2010 had revealed mild early degenerative disk changes. Tr. 242. In October 2012, she again recounted back pain as well as joint pain. Tr. 336-341, 372-373. Then, in January 2013, her treating doctor, Dr. Joe Staggs, formally diagnosed her with arthralgias. Tr. 361-365, 368-371. He ordered lab tests, the results of which ruled out other possible causes for her inflamed joints, tender points, and range of motion deficits, and ultimately resulted in diagnoses of fibromyalgia and osteoarthritis. Tr. 383-384, 385-386, 387-388, 394-395.

Fibromyalgia is a common "nonarticular disorder" characterized by "generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 375 (Richard K. Albert et al. eds., 19th ed. 2011). The symptoms of fibromyalgia include generalized soft-tissue pain that is disproportionate to the physical findings, negative laboratory results despite wide spread symptoms, fatigue, and symptoms associated with irritable bowel syndrome ("IBS"). *Id.*

We note that the Plaintiff also suffers from severe IBS. In January 2009, she began experiencing abdominal pain, bloating, diarrhea, and nausea. Tr. 253. Dr. Staggs initially diagnosed her with gastroenteritis. Tr. 211, 253, 251. However, when her symptoms failed to respond to the treatment prescribed, he referred her to gastroenterologist, Dr. Hrair Simonian. Dr. Simonian ordered an EGD with biopsies, a colonoscopy with biopsies, a hepatobiliary scan, and ultrasounds of her abdomen and pelvis, which revealed only an erosion in the atrium and left colon

diverticulosis with no evidence of diverticulitis. Tr. 199-204, 214-223, 244, 249-250, 254-258, 314-319. Based on the pathology results, he diagnosed her with h. pylori and severe irritable bowel syndrome ("IBS"). In spite of receiving prescriptions for various IBS medications, her symptoms persisted. In February 2010, Dr. Staggs referred her to the Mayo Clinic in Arizona. Dr. Arthur Shiff of the Mayo Clinic ordered a repeat EGD and hepatobiliary scan, as well as a CT with enterography, a stool test, and blood tests for further evaluation of her complaints. Tr. 227-231, 235-238, 240-244. Testing revealed mild hypercalcemia and small-bowel bacterial overgrowth syndrome, for which Dr. Shiff prescribed Cipro. The Plaintiff did not seek out further treatment for her condition until January 2011. Tr. 348-352. At that time, Dr. Simonian noted some improvement in her abdominal pain with the addition of Rifaximin.[2] However, he also increased her dosage.

The Plaintiff next sought treatment in May 2012, at which time she presented in the emergency room with complaints of abdominal pain. Tr. 320-325. She indicated that her current medications were no longer effective. An exam revealed moderate and generalized abdominal tenderness, and a CT of her abdomen and pelvis showed distention of the urinary bladder and diverticulosis. The ER doctor prescribed Lorcet Plus, Flagyl, and Cipro.

Thereafter, the Plaintiff sought out consistent treatment for her abdominal pain, distention, constipation, diarrhea, heartburn, nausea, and vomiting. Tr. 342-347. A repeat EGD showed mild gastritis in the antrum and mild esophagitis. Tr. 326-330, 355-38, 376-377. Further, a colonoscopy

---

[2] Xifaxan, also known as Rifaximin, is an antibiotic that fights bacterial infection in the intestines and IBS in adults whose main symptoms is diarrhea. *See Xifaxan*, *at* http://www.webmd.com/drugs/2/drug-91340/xifaxan-oral/details (last accessed September 24, 2015). Although rare, Xifaxan can cause Clostridium difficile, a severe intestinal condition caused by resistant bacteria, resulting in persistent diarrhea, abdominal or stomach pain, and cramping. *See id.*, *at* http://www.webmd.com/drugs/2/drug-91340/xifaxan-oral/details#side-effects (last accessed September 24, 2015).

confirmed her prior diagnosis of diverticulosis.  Tr. 331-335, 353-354, 374-375.  Dr. Simonian diagnosed severe IBS and intestinal bacterial overgrowth for which he prescribed Xifaxan, Belladonna, Hyoscamine[3], and Nortriptyline.  Tr. 336-341, 372-373.

After reviewing the entire record in this case, the undersigned finds that the Plaintiff's date of onset is ambiguous.  It is clear that she began suffering from IBS and back and joint pain prior to December 27, 2012.  However, the date her symptoms became disabling cannot be gleaned from the record before us.  Accordingly, remand is necessary to allow the Administration to develop the record as to the Plaintiff's onset date.  On remand, the ALJ is directed to contact rheumatologist, Dr. Russell Branum, and gastroenterologist, Dr. Hrair Simonian, and ask them to opine as to the Plaintiff's onset date.  Should these doctors refuse to provide an opinion, the ALJ must call a medical expert to testify regarding the Plaintiff's onset date.

The AC's RFC assessment is also troubling, given that it does not incorporate any limitations stemming from the Plaintiff's severe IBS.  While we realize there are periods of time during which the Plaintiff did not seek out treatment, it is evident to the undersigned that the Plaintiff experienced flare-ups of severe IBS that would have more than a minimal impact on her ability to perform work-related activities.

The record contains only two RFC assessments, completed by non-examining, consultative examiners who concluded the Plaintiff would have only environmental restrictions and would need to avoid eye irritants and prolonged exposure to bright lights.  Tr. 49-51, 60-62.  It appears that the AC adopted these assessments without giving any consideration of the limitations that might arise

---

[3] Hyoscamine is a product containing both Belladonna Alkaloids and Phenobarbitol.  *See* Hyoscamine, *at* http://www.webmd.com/drugs/2/drug-56697/hyoscamine-oral/details (last accessed September 24, 2015). Belladonna Alkaloids help to reduce the symptoms of stomach and intestinal cramping by slowing the natural movements of the intestines and relaxing the muscles in the stomach and intestines.  Phenobarbitol is a barbiturate sedative that helps to reduce anxiety.  Side effects of Hyoscamine include drowsiness, weakness, blurred vision, dry eyes, dry mouth, nausea, constipation, and abdominal bloating.  *See id.*, at http://www.webmd.com/drugs/2/drug-56697/hyoscamine-oral/details#side-effects (last accessed September 24, 2015).

from the Plaintiff's severe IBS, namely the need to take frequent, unscheduled breaks and the possibility of absences due to her symptoms and treatment.  Therefore, on remand, the Administration is also ordered to obtain an RFC assessment from Dr. Simonian describing any limitations that might result from the Plaintiff's severe IBS.

**IV.** **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 24th day of September, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE